All rise. This Honorable Appellate Clerk, Third Magistrate of Illinois, is now in session. The Honorable William E. Oldridge, Presiding Justice. Please be seated. Thank you. Madam Clerk, please call the first case. 31009 Angie Ritter v. Janet Ritter v. Appellate v. Thomas Watson v. State Farm Mutual Auto Deal Insurance Company, Appellate by Daniel Johns. Mr. Johns, you may proceed. Thank you, Your Honor. May it please the Court, Counsel, Daniel Johns for the Appellate State Farm Mutual Auto Deal Insurance Company. The case before the Court is rather straightforward. The salient issue is whether a letter submitted by the plaintiff's attorney shortly after the accident in question is sufficient in its terms to constitute the commencement of arbitration, as is required by a clear and unambiguous provision of the State Farm policy that provides that any arbitration or lawsuit is barred unless commenced within two years of the date of the accident. The letter was within two years of the date of the accident, but that was all that occurred within the requisite two-year period. So the issue is whether the communication or the language set forth in that letter constitutes a demand for arbitration or the commencement of arbitration. We respectfully submit that it does not, plaintiffs obviously contend otherwise. The facts surrounding the case are few but are uncontested. The accident occurred on March 5, 2005. On March 14, 2005, the insurance attorney sent a letter to State Farm, actually two letters, one on behalf of each of the plaintiffs, identical except for the identification of the plaintiff. In that letter, counsel advises of his representation and gives, quote, official notification that we are making an uninsured motorist claim and a claim for medical expenses, close quote. Thereafter, State Farm acknowledged that communication and sent out a letter dated March 21, 2005, acknowledging receipt of the communication. Thereafter, there was no communication whatsoever between the plaintiffs, their attorney, and State Farm until receipt by State Farm on or about September 27, 2007, some two and a half years later, of a letter from an individual in plaintiff's counsel's office enclosing a number of medical bills and medical records. In response to that submission, which was, again, over two and a half years after the initial communication, State Farm rejected the submission and cited to the plaintiff's attorney the provision of the State Farm policy that required the commencement of arbitration or suit within two years. Subsequently, the plaintiffs filed suit in circuit court, which was more than three years after the accident, seeking in count one a declaratory judgment that they had made a timely demand for arbitration and in count two seeking damages in the form of compensation for their claim, the damages for their claim and also for unreasonable and vexatious delay in commencement. Now, your client's letter in response to the first letter from Mr. Cusack requested that conclusion of the treatment occur, then send in those materials. Am I correct? There was language in that letter saying at the conclusion of treatment, send in your medical bills and the medical records. The claims representative, as indicated in her deposition, did not intend that to be a timeline as to when the material should be submitted or when there should be follow-up communications. I never thought that anyone would take it as such. That language is in there. Notably on this record, plaintiff, and that inquiry would be particularly relevant if there was a claim of estoppel or waiver. But there is no claim. In fact, the plaintiffs have specifically stated in their brief that they are making no claim of waiver or estoppel on this case. Also, we don't know why there was a delay. There is a statement in the brief that upon the completion of treatment materials were submitted, but there is no evidence of record. They submitted no evidence in the form of affidavits, deposition testimony or otherwise as to why there was this delay in two and a half months. So there's no indicated reliance or the fact that there was at the end of treatment. We just know there was a two and a half year delay. That's all there is of record. The Illinois courts have uniformly upheld these contractual limitations clauses. I don't think there's a case in Illinois that has not upheld it. There are some cases that have said if it's only one year, then that's too short because that's shorter than the time period for filing a suit. But if it's at least two years, the courts have uniformly upheld these limitations clauses. And where the communication has come after the expiration of two years, the courts have uniformly said your claim is barred because it's outside the two years. The parties have only found two appellate cases where there has been a communication within the two years, and there is an issue as to whether or not that communication is sufficient to constitute a commencement of arbitration or a demand for arbitration. Those two cases are the Bucollo case out of the First District, which is a 1990 case, I believe, and the Hale decision out of the Fifth District, which is a 2002 decision. Bucollo was an uninsured motorist coverage case, as is this case. The Hale case was an underinsured. Although, quite frankly, I don't think that is a distinguishing factor in the cases as it can be in some instances. In the Bucollo case, the court, of course, recognized the clause and said that it was enforceable, and therefore looked to see if the plaintiff had made a demand for arbitration within the requisite two-year period and concluded that the plaintiff had not. The background in that case was that a claim had been presented. In fact, it had been investigated. The insured had been interviewed. The plaintiff's attorney and the claims representative had had discussions about the disposition of the case. They had discussed value, and then plaintiff's counsel sent a letter, again within the two-year period, to the country mutual claim representative suggesting that he thought the value of the case was in excess of $100,000 and even said, I think the best thing to do with this case is to arbitrate, and I will in the future send you the name of my arbitrator. Thereafter, there was no communication. He then came back after the two years and demanded, said, I hereby demand arbitration. This is the name of my arbitrator. And the court looked at it and said, no, you didn't make a demand for arbitration. You presented a claim that you had to make a demand for arbitration, and that you did not do. You mentioned arbitration and thought that the best thing to do would be arbitrate, but never made the demand for arbitration, and therefore they held that the claim was barred. In contrast, we have the Hale decision, and I would respectfully submit that the Hale decision is not sound in its reasoning as to why a communication of a much lesser degree within the two-year period would constitute a demand for arbitration. In that case, there was a clause. Again, it was a country mutual policy. There was the provision that you have to commence arbitration within the two years. Plaintiff's counsel in that case had sent a letter advising representation, indicating that the plaintiff was making a claim. The Fifth District concluded that by saying that a claim was being made, that communication was de facto a demand for arbitration because the only way that you can have a claim is to arbitrate, and that is not true. Arbitration is a means of adjudicating or resolving a dispute concerning the claim. You make the claim, and if you can't agree on liability of the uninsured or underinsured tortfeasor or the amount of damages, then the means of resolving that dispute is through arbitration. That's as provided in the policy, and that's as provided by statute. The policy is consistent with the statute that says if there is a dispute concerning liability of the tortfeasor or damages, then you resolve that through arbitration. The policy does not say that you have to make a claim within two years. It says you must demand or commence arbitration or sue. They're two different things. You make a claim, and then if you can't resolve that claim by agreement, then you engage in arbitration, and you engage in arbitration by initiating the arbitration most commonly by just saying, I hereby demand arbitration. Sometimes there's a concurrent with that. I nominate as my arbitrator Sam Smith. Sometimes not, but all you have to do is say, I demand arbitration. That's the initiation of arbitration. But that was not the case here. So when you say I'm going to need- But in this particular policy, you couldn't do so until 30 days expired after claim notification. Pardon? In this particular policy, you had to wait 30 days to put a demand for arbitration. I don't believe there is a requirement. I mean, if there was some- I think you have 30- Yeah, I think there is. There is, but it would be 30 days after the claim. After the claim notice. After the claim notice. Well, here the claim notice was obviously in March, and so they would have had 23 months. I'm saying what the argument is, is a claim notice, there's 30 days, arguably, for a response by the insurer, so that that would support the idea that there would be an arbitration. Well, it's a separate process. There's a claims process, a claims adjustment process, then there's an arbitration process. And it's akin to a situation where you weren't dealing with an insurance company, you were just dealing with a torch user. A claims attorney will often make the claim, but that doesn't excuse filing the lawsuit within the statutory limitations period. The Fifth District also said, well, that the purpose of the limitations period in the policy was notification, and when they received the letter, they obviously had notification. And, therefore, everything is okay. I mean, the purpose of the provision is satisfying. We would, again, contend that that is not the reason. Notification is one reason, as is a reason for a statute of limitations. But the second part is to have diligent prosecution of claims. And, obviously, here we didn't have a diligent prosecution of claims because we had two and a half years elapsed with absolutely no communications from counsel. So I think the Bucolla decision is much better founded, has sound reasoning, saying that we've got clear and unambiguous language, and we don't know if the language is ambiguous, the insurance company is going to get hammered on it, if there's any way to construe it in favor of the insured, the insured wins. But the courts have said, okay, the flip side of this, if it's clear and unequivocal language, then we're going to enforce it as written. And here we have clear and unequivocal language that says you must commence arbitration or suit within two years of the date of the accident. There's just no way to read that any other way. Thank you. The Hale court, essentially, through judicial construction, rewrote the policy. They rewrote the policy to say read the provision there saying you must submit a claim within two years. And that's not what the policy says. The trial court, in its order said, found that the plaintiffs timely submitted their demand for arbitration within or timely submitted their demand for arbitration. That begs the question, did they ever submit a demand for arbitration? I submit they did not. They submitted a letter notifying the State Department of the claim they did not submit a demand for arbitration. In fact, never have submitted a demand for arbitration. They just filed suit more than three years. So we respect the request that the court reverse the trial court to find that the plaintiffs did not submit a timely demand for arbitration and that their claims were barred. I don't believe there are any questions. Thank you, Mr. Johnson. Mr. Watson, you may respond. Thank you, Your Honor. Police court, counsel. The bottom line in this case is that the defendant had everything they needed in order to process the plaintiff's uninsured motorist claim. And the defendant's actions recognize this as well. I think the defendant's argument can be simplified as the plaintiffs didn't use the magic words of demand arbitration. Therefore, they haven't commenced it, and the claim should be dismissed. The Fifth District in Hale didn't buy that argument, and I'm asking this court to also not buy that argument. When we look at the general rule when construing these limitations clauses, the limitations must be liberally construed in the policyholder's favor and strictly against the insurer. Here, the policy in question states any arbitration or suit against us we barred unless commenced in two years after the date of the accident. But nowhere in the policy does it explain or give a definition of what it means to commence the arbitration. The defendant's position is that you have to use the words demand arbitration. Plaintiffs, we believe that our letters stating official notification that we're making an uninsured motorist claim is sufficient to commence arbitration. In the talismanic language of demand arbitration, it's unnecessary, especially in light when you liberally construe the policy in the plaintiff's favor. As the Fifth District in Hale, when they were describing how the process of arbitration proceeds, said there's really no way to go through arbitration, or there's absent an arbitration proceeding, timely notification is sufficient to commence the arbitration. In other words, that's exactly what we have here. Because there's no way to make an uninsured claim absent an arbitration proceeding, our notification that we're making a claim for an uninsured motorist claim necessarily means that we're also going to be demanding arbitration. Are they two separate things? I don't believe so, Your Honor. I mean, you can put in a claim and a party can say, yeah, here's this check. So is that arbitration? Well, no, I believe when you're making an uninsured motorist claim stating that is what you have an uninsured motorist claim here, I don't really think there's any other way to settle other than through an arbitration. So you're saying in the entire industry they never write a check without arbitration? No. Well, they can obviously settle the case prior, and that obviously wasn't done here. And I don't believe there's any other – absent the settlement, there is no other way to end the case other than through an arbitration. If that answers Your Honor's question, I'm not sure. Well, did they have any materials to settle the case until after the two years? Well, no, and that's because the claimants were still treated, and that's following the discretion of the defendants. They – You don't make an argument of waiver, do you? Well, no, I don't really necessarily think we meet the facts of an estoppel argument, and it's the same thing as what happened in Hale as well. Well, did they have the materials before the two years expired in Hale to settle? No, they did not. And I don't really think that's necessarily essential as well. For example, what happens if it's towards the end of the two-year period? You don't have all the materials there. The client just walked in the door a week before the two years was to run. Obviously, you won't be able to get all the medical records and all the bills to submit them within the two-year period. I think it's the notification within the two-year period which is essential, and that's what the Hale court decided as well, because that's what the purpose of the policy – the provision of the policy, that's the purpose of it, is notification and to make sure that claims aren't stale or evidence is not lost or destroyed. And there's been no evidence that any evidence is destroyed or lost in this case. We gave notification. You think that's the purpose of the notification? Well, I think that's – yeah, that's one of the reasons for this clause is to prevent stale claims, and that's essentially what the Hale court said as well. Counsel, isn't there really a factual distinction between this case and the Hale case? In Hale, the plaintiff's counsel notified the insurance company of the claim very close to the two-year limitation. I think there was only a window of a month to go before the two-year limitation period expired in the policy. And it was the insurance company that didn't respond for four months until after the limitations period had run. In this situation presented here to us, plaintiff notified very quickly after the accident of the claim. The insurance company proudly responded, and then it was plaintiff who dropped the ball and let the period expire, the two-year window expire. So would you speak to that distinction? I think Hale can be distinguished on that factual basis. Well, sure, but I also think one of the distinctions with Hale in current cases, after we filed or sent our letter notifying that we're making an official claim for an uninsured motorist claim, we also invited what is necessary to proceed with the claim. In response, we receive a letter stating, please submit all of the medical bills and records upon completion in order to process the pending uninsured motorist claim. And do we know from this record when the treatment was completed? Well, no. We haven't submitted exactly when the treatment was ended, but all the bills and records were submitted after the treatment was finished. And here, when there's a serious injury, it can take substantial time to go through all the treatment as well as. . . Don't you think there's some onus, though, on you when if the treatment is approaching, still ongoing and approaching that two-year limitation, don't you think somebody better pick up a pen and pencil and contact the insurance company? Well, possibly, but I also think it's a two-way street here. This is the defendant. This is their own client. Their client paid for this policy, and they could simply have stated instead of send us all the bills and medical records upon completion, they could simply have said send us a letter demanding arbitration. So I don't necessarily think it's solely on the plaintiff here, especially in light of the letter that we received saying send us the bills and records after completion, and we do so. And then in response, we get a letter denying coverage. I don't necessarily think that's fair. And I know, as counsel said, we haven't made a misstable argument. I don't think we meet those requirements, but I don't think it coordinates to completely ignore equitable considerations when making a decision. You don't really mean to suggest that they could send a letter demanding arbitration. And it cuts your argument because you're trying to say the letter you sent was demanding arbitration. Well, if they want, well, yes, Your Honor, but the difference here is obviously we think our letter was sufficient, but if they need the magic word of demand arbitration instead of official notification, then we have no problem sending a letter simply saying demand arbitration instead of official notification. But I think the Hale case can also be distinguished from ours is, in that case, in the policy there was actually language stating exactly what it means to commence arbitration. And there it said that it's upon written demand that arbitration would be commenced under the policy. Here there is no such definition in the policy. And moreover, our letter is much more definite than the letter in Hale, which merely said it appears we have an underinsured motorist claim. So I think we've done more with a less restrictive policy than in Hale. The Bacallo case is distinguishable as well. The letter in Bacallo merely stated I believe the best thing to do is to arbitrate, but there it was ambiguous whether the attorney was saying he believed it was to arbitrate the uninsured motorist claim or whether it was the policy stacking, which is also mentioned in his letter. And the court recognized that, and they also went on to discuss how the letter saying that he believed the best thing to arbitrate was uniquely contrasted by this letter that unequivocally demanded arbitration. There's a Parrish case was also cited by the defendant. I don't even think that really comes into play here. The Parrish case, there was no communications at all prior to the limitations period ending, which is obviously distinguishable from the facts here. Also, the defendants have tried to equate the situation here with that of a statute of limitations, and I don't think any such equivalence can be made. There's very little leeway afforded to one who misses a legislative mandate such as a statute of limitations. But here, when everything's been supplied to the defendant, everything that's necessary for them to process the claim, I don't think it's necessary to enforce the private agreement between them. And that's essentially what Hale said, and that's what we're asking this court to do as well. Again, when none of the reasons for applying the contractual limitations clause exist, because all the information has been provided pro forma application, the terms of limitation clause should not be utilized. Because to do so would be exalting form over substance. And unless your honors have any more questions, I ask this court to affirm the lower court. Thank you. Thank you.  Thank you, your honor. Very briefly, the counsel made the comment that the plaintiffs were still treating. Again, there's nothing in the record as to how long they treated. They treated for one day beyond the date of the notification letter. They treated for six months. They did not put that in. And again, they did not raise a stop or a waiver. Counsel made a comment about that counsel asked for advice as to what they were to do. There's no asking advice in that letter. The letter came from counsel. This is where we represent the plaintiffs, and they are making an uninsured motorist coverage claim. It doesn't ask for advice as to what to do or when to send it in. This is an attorney sending the letter. That's an important thing to look at as well. It's not an insured sending the letter. It's an attorney sending the letter. The attorney is presumed to know the law. He's presumed to know the policy. If he had any questions about the policy, he could have inquired. He did not inquire. He did not seek direction. And the word keeps coming up, an official notification. It's an official. It says official notification of claim. It doesn't say anything about arbitration. Going back to the Bucala decision, the purported distinction is not there. There was unequivocally a claim presented there because they didn't even talk about it. They discussed value on it. And then they went to the point of arbitration, and the court said, well, you made the transition to start talking about arbitration, but they said we have to strictly construe the provision of the policy. And even though you're talking about arbitration in the context of a presented claim, and, in fact, a well-processed claim, you didn't make the demand for arbitration, and, therefore, that's insufficient here. There was nothing beyond the notification of claim. And counsel said that the insurance company had everything they needed. The insurance company had nothing other than a notification, you know, that the accident had occurred and that they were making a claim that they were being treated. They didn't submit any records or bills until after the two-year period had run. So the opposing counsel does make an argument that the Bucala case, the language is different. I think he was arguing that the language in Hale was different. In Hale, it said that they would talk about the policy in Hale, which is a country mutual policy, does provide that arbitration shall be commenced by a written demand for arbitration. So they did direct that you have to have a written demand for arbitration, whereas the state farm policy does say you have to commence arbitration, that you have to do something to commence arbitration. I think that it's generally understood in the community that you commence arbitration by making a demand for arbitration. Okay, but also Bucala is a country policy as well. The Bucala is a country policy, but I don't think that the Bucala, they said that you have to have a written demand. There is some language in there when they're talking about arbitration suggesting a demand for arbitration, but I don't think it says that it has to be a written demand for arbitration in that case. But in either case, it wouldn't be a distinction because there was a writing. There was a letter in Bucala. There was a letter in Hale, and there is a letter here. Now, you could, I suppose, probably make the argument that you could verbally, since the state farm policy might have something on, say, commenced arbitration, you could say, okay, maybe you can verbally communicate a demand for arbitration. That would be sufficient since it doesn't say it has to be a written demand. But that still, you have to do something to commence arbitration, and they did nothing. That's the salient point here. In fact, in Bucala, they discussed there was a verbal demand as well. There was a verbal demand that was involved, and they had to focus on the written demand. Thank you, Mr. Johns. Thank you, counsel, both, for your arguments in this matter this morning. It will be taken under advisement, and a written disposition shall issue, and the court will stand in brief recess for panel discussion. This court is now at recess.